UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DAVID DIAMOND, JR.                                          CIVIL ACTION

VERSUS                                                      NO. 23-5042

SHELTON SERVICES, INC.                                      SECTION M (2)

**ORDER & REASONS**

Before the Court is plaintiff David Diamond, Jr.'s motion for summary judgment.[1] Defendant Shelton Services, Inc. ("Shelton") responds in opposition,[2] and Diamond replies in further support of his motion.[3] Having considered the parties' memoranda, the record, and the applicable law, the Court issues this Order & Reasons denying Diamond's motion.

I.   **FACTUAL BACKGROUND**

This matter concerns claims for an alleged breach of an employment agreement. Shelton is an industrial and environmental services company providing various cleaning and waste removal services to the oil, gas, and chemical industries.[4] In the spring of 2018, Shelton hired Diamond to start and run its new tank-cleaning[5] division in Louisiana.[6] Shelton did not previously provide tank-cleaning services and hired Diamond because of his experience in that field.[7]

On April 14, 2018, Diamond and Shelton executed an "Executive Employment, Confidentiality, and Non-Competition Agreement."[8] Section 12 of that agreement, which is

---

[1] R. Doc. 8.
[2] R. Doc. 12.
[3] R. Doc. 15.
[4] *See* R. Docs. 1 at 8; 6 at 14.
[5] "Tank cleaning" refers to the maintenance and decontamination of "industrial tanks, vessels, and pipelines used to store and mix chemical compounds and which are fundamental parts of petrochemical facilities." R. Doc. 1 at 4-5; *see also* R. Doc. 6 at 14.
[6] R. Docs. 1 at 5-6; 6 at 14.
[7] R. Docs. 1 at 4-5; 6 at 14.
[8] R. Doc. 1 at 6.

entitled "Restrictive Covenant," contains noncompete and nonsolicitation provisions prohibiting Diamond from "directly or indirectly carry[ing] on or engag[ing] in any business or activity similar to that of Shelton in any of the parishes, counties and/or municipalities listed in the Restricted Area," or "directly or indirectly solicit[ing] any customers of Shelton that are located in, or otherwise have a presence in, any of the parishes, counties and/or municipalities listed in the Restricted Area."[9] The agreement states that "Shelton is in the business of providing industrial and environmental services … including but not limited to … tank and vessel cleaning," and defines the "Restricted Area" as encompassing 62 of Louisiana's 64 parishes and 150 of Texas's 254 counties.[10] During his employment with Shelton, Diamond provided tank-cleaning services only in St. Charles Parish, Jefferson Parish, Iberville Parish, Harris County, Jefferson County, and Orange County.[11]

On May 15, 2023, Diamond resigned from his position at Shelton, and Shelton sent a letter to Diamond that same day reminding him of his obligations under the employment agreement, expressly stating that Shelton did not waive any part of the restrictive covenant.[12] In June 2023, Diamond began pursuing tank-cleaning activities in Louisiana on behalf of a new entity.[13] In particular, Diamond submitted several bids to clean the tanks of one of Shelton's prior clients, International-Matex Tank Terminals, in St. Charles Parish and was ultimately awarded one of those contracts on August 28, 2023.[14] That same day, Shelton sent a "cease and desist" email to Diamond reiterating the terms of the restrictive covenant and advising Diamond that it would file suit against him if he did not stop violating the agreement.[15]

---

[9] R. Doc. 1-1 at 4-5.
[10] *Id.* at 3-4.
[11] R. Docs. 6 at 18; 9 at 4.
[12] R. Docs. 1 at 9; 6 at 6.
[13] R. Doc. 1 at 10.
[14] *Id.* at 10-11; R. Doc. 6 at 18-20.
[15] R. Doc. 1-2.

Shortly thereafter, Diamond filed suit against Shelton seeking a declaratory judgment that the restrictive covenant is invalid as a matter of law because it "attempt[s] to preclude Mr. Diamond from working in localities that, at the time of the agreement, Shelton Services had no operations in."[16] In response, Shelton filed a counterclaim against Diamond seeking, among other things: (1) a declaratory judgment declaring that the restrictive covenant is enforceable in the parishes in which Shelton carries on its tank-cleaning business, including St. Charles Parish, Jefferson Parish, Iberville Parish, Harris County, Jefferson County, and Orange County; (2) a preliminary and permanent injunction prohibiting Diamond from disclosing Shelton's confidential information or engaging in tank-cleaning services in these six parishes/counties; and (3) damages resulting from Diamond's alleged breach of the employment agreement.[17] Diamond then filed the instant motion for summary judgment.

## II.   PENDING MOTION

In his motion, Diamond admits that his post-resignation tank-cleaning activities constitute a breach of the noncompete and nonsolicitation provisions of his employment agreement.[18] He argues, however, that those provisions are legally void and unenforceable because Shelton was not operating in any of the parishes or counties listed in the agreement at the time of its execution.[19] Diamond contends that the language in Louisiana's restrictive covenant statute (La. R.S. 23:921) limiting the scope of restrictive covenants to only those parishes or municipalities in which "the employer carries on a like business" must be read to mean those parishes or municipalities in which the employer was carrying on a like business "at the time of the relevant contract's *execution*."[20]

---

[16] R. Doc. 1 at 16.
[17] R. Doc. 6 at 21.
[18] R. Doc. 8-1 at 3.
[19] *Id.* at 3; R. Doc. 8 at 2.
[20] R. Doc. 8-1 at 7 (emphasis in original).

Otherwise, says Diamond, businesses could list all 64 Louisiana parishes and "lock" the employee out of future business territories as the business grows.[21] Diamond also cites to caselaw he contends supports his narrow interpretation of the restrictive covenant.[22]

In response, Shelton engages in statutory interpretation to argue that the statute's present tense shows that noncompete agreements cover those parishes or municipalities in which the employer carries on a like business "at the time the employer seeks to *enforce* the agreement."[23] If not, says Shelton, a company "which is not yet 'carr[ying] on' business in any parish or municipality at the time of execution," but wishes to start or expand its business, "will *never* have an enforceable noncompete agreement, even when the signatory is the head employee or mastermind of the new business."[24] In further support of enforcing the restrictive covenant, Shelton points to the legislature's recent expansion of the statute's noncompete provisions, and it seeks to distinguish the cases cited by Diamond.[25]

In reply, Diamond maintains that it is not absurd to find that new businesses cannot enter into enforceable restrictive covenants since other alternatives exists.[26] Rather, Diamond argues that looking to the parishes or municipalities in which a business operates at the time of enforcement yields an absurd result because an employee could then be prohibited from working in locales into which the business expanded post-termination but pre-enforcement.[27]

---

[21] *Id.* at 8.
[22] *Id.* at 10-15.
[23] R. Doc. 12 at 5 (emphasis added).
[24] *Id.* at 11 (emphasis in original).
[25] *Id.* at 13-17.
[26] R. Doc. 15 at 3.
[27] *Id.* at 5.

### III. LAW & ANALYSIS

#### A. Summary Judgment Standard

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id*. A party moving for summary judgment bears the initial burden of demonstrating the basis for summary judgment and identifying those portions of the record, discovery, and any affidavits supporting the conclusion that there is no genuine issue of material fact. *Id*. at 323. If the moving party meets that burden, then the nonmoving party must use evidence cognizable under Rule 56 to demonstrate the existence of a genuine issue of material fact. *Id*. at 324.

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). The substantive law identifies which facts are material. *Id*. Material facts are not genuinely disputed when a rational trier of fact could not find for the nonmoving party upon a review of the record taken as a whole. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986); *EEOC v. Simbaki, Ltd*., 767 F.3d 475, 481 (5th Cir. 2014). Unsubstantiated assertions, conclusory allegations, and merely colorable factual bases are insufficient to defeat a motion for summary judgment. *See Anderson*, 477 U.S. at 249-50; *Little v. Liquid Air Corp*., 37 F.3d 1069, 1075 (5th Cir. 1994); *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994). In ruling on a summary-judgment

motion, a court may not resolve credibility issues or weigh evidence. *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008). Furthermore, a court must assess the evidence, review the facts, and draw any appropriate inferences based on the evidence in the light most favorable to the party opposing summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014); *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001). Yet, a court only draws reasonable inferences in favor of the nonmovant "when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

After the movant demonstrates the absence of a genuine issue of material fact, the nonmovant must articulate specific facts showing a genuine issue and point to supporting, competent evidence that may be presented in a form admissible at trial. *See Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998); Fed. R. Civ. P. 56(c)(1)(A), (c)(2). Such facts must create more than "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. When the nonmovant will bear the burden of proof at trial on the dispositive issue, the moving party may simply point to insufficient admissible evidence to establish an essential element of the nonmovant's claim in order to satisfy its summary-judgment burden. *See Celotex*, 477 U.S. at 322-25; Fed. R. Civ. P. 56(c)(1)(B). Unless there is a genuine issue for trial that could support a judgment in favor of the nonmovant, summary judgment must be granted. *See Little*, 37 F.3d at 1075-76.

B. Analysis

    1. Choice of Law

At the outset, this Court must determine which state's law should guide its interpretation of the employment agreement. The agreement contains a choice-of-law clause dictating that its

provisions be interpreted and governed by Texas law.[28] However, because this Court is a Louisiana federal court sitting in diversity, Louisiana's choice-of-law rules apply. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).

"Louisiana has a strong public policy against forum selection and choice of law clauses in employment contracts as indicated by both the text of § 921(A)(2) and the Louisiana Supreme Court's interpretations." *Waguespack v. Medtronic, Inc.*, 185 F. Supp. 3d 916, 925 (M.D. La. 2016) (citing *Sawicki v. K/S Stavanger Prince*, 802 So.2d 598, 606 (La. 2001)) (footnotes omitted). In particular, § 921(A)(2) provides that that a choice-of-law clause in an employment contract is null and void unless ratified by the employee after the occurrence of the incident that is the subject of the dispute. La. R.S. 23:921(A)(2); *see Giglio v. Shipyard Supply Acquisition Corp.*, 2022 WL 4106454, at *1 (E.D. La. Sept. 8, 2022). Diamond denies ratifying the choice-of-law clause after resigning from Shelton, and Shelton has not alleged otherwise.[29] Because there was no ratification, the choice-of-law clause is null and void. *See Giglio*, 2022 WL 4106454, at *1; *Waguespack*, 185 F. Supp. 3d at 925.

Nonetheless, the Court must still decide, absent the choice-of-law clause, whether Texas or Louisiana law should govern its analysis of the agreement. Louisiana's choice-of-law rule concerning conventional obligations requires the Court to apply "the law of the state whose policies would be most seriously impaired if its law were not applied to that issue." La. Civ. Code art. 3537. It further provides that:

> That state is determined by evaluating the strength and pertinence of the relevant policies of the involved states in the light of: (1) the pertinent contacts of each state to the parties and the transaction, including the place of negotiation, formation, and performance of the contract, the location of the object of the contract, and the place of domicile, habitual residence, or business of the parties; (2) the nature, type, and purpose of the contract; and (3) the policies referred to in Article 3515 [*viz.*, the

---

[28] R. Doc. 1-1 at 8.
[29] R. Doc. 1 at 3-4.

> state's policies most seriously impaired if its law were not applied to that issue], as well as the policies of facilitating the orderly planning of transactions, of promoting multistate commercial intercourse, and of protecting one party from undue imposition by the other.

*Id.* Louisiana courts have routinely held that Louisiana has a "strong public policy disfavoring noncompetition agreements." *See, e.g.*, *O'Hara v. Globus Med., Inc.*, 181 So. 3d 69, 84-85 (La. App. 2015); *see also Sentilles Optical Servs., Div. of Senasco, Inc. v. Phillips*, 651 So. 2d 395, 400 (La. App. 1995) ("Louisiana has an obvious interest in protecting its citizens, employers and employees, against territorially unlimited covenants not to compete ….").

Here, Shelton is a Texas corporation, headquartered in Texas, while Diamond is and has been a Louisiana resident at all times relevant to this dispute.[30] During Diamond's employment, he and the company conducted business in three Louisiana parishes and three Texas counties.[31] While the agreement states that it was executed in Texas, Diamond contends that he signed the agreement in Louisiana.[32] Under these circumstances, because of Louisiana's strong interest in regulating restrictive covenants,[33] especially those affecting its residents, and because the parties do not dispute that Louisiana law applies in this case, the Court will apply Louisiana law.[34]

### 2. Restrictive Covenants

"Restrictive covenants are unfavored in Louisiana and are narrowly and strictly construed." *Brock Servs., L.L.C. v. Rogillio*, 936 F.3d 290, 296 (5th Cir. 2019). Indeed, restrictive

---

[30] R. Docs. 1-1 at 8; 8-1 at 5 n.10.
[31] R. Docs. 6 at 18; 9 at 4.
[32] *See* R. Docs. 1-1 at 8; 8-1 at 5 n.10.
[33] *See Restivo v. Hanger Prosthetics & Orthotics, Inc.*, 483 F. Supp. 2d 521, 529 (E.D. La. 2007) ("The Court finds that Louisiana law governs the interpretation of the Employment Contract given Louisiana's strong public policy disfavoring non-compete contracts, and because the contract was executed in Louisiana by a Louisiana domiciliary working under the contract in this state."); *Smith v. Com. Flooring Gulf Coast, L.L.C.*, 364 So. 3d 346, 351 (La. App. 2019) ("Historically, Louisiana jurisprudence has had a strong public policy against non-compete agreements between employers and employees, strictly construing such agreements against the party seeking enforcement.").
[34] The Court, however, does note below that the application of Texas law would bring about no different result. *See infra* note 37.

8

covenants are deemed null and void unless they meet one of the exceptions laid out in Louisiana's restrictive covenant statute, but every covenant that meets an exception "shall be enforceable." La. R.S. 23:921(A)(1). The exception at issue in this case states:

> Any person … who is employed as an agent, servant, or employee may agree with his employer to refrain from carrying on or engaging in a business similar to that of the employer and/or from soliciting customers of the employer within a specified parish or parishes, municipality or municipalities, or parts thereof, so long as the employer carries on a like business therein, not to exceed a period of two years from termination of employment.

*Id.* 23:921(C).

The restrictive covenant here attempts to preclude Diamond from working or soliciting customers in 62 of Louisiana's 64 parishes and 150 of Texas's 254 counties, though Shelton was not operating its tank-cleaning business in any parish or county at the time the agreement was executed. Thus, the issues raised in this case are (1) whether the agreement may be modified to exclude parishes or counties in which Shelton did not "carry on" its tank-cleaning business; and (2) if so, whether the parishes in which an employer "carries on" its business is determined at the time of the agreement's execution, the employee's termination or resignation, or the agreement's enforcement. Essential to this second issue is whether a restrictive covenant can include parishes that the employer does not operate in when the covenant is entered but which it plans to and does expand into during the course of the employee's employment.

### a. The restrictive covenant may be reformed to exclude those parishes in which Shelton did not operate.

While the present restrictive covenant is geographically overbroad, in that Shelton did not operate in all of the parishes and counties listed in the agreement, the Court may reform the provision. As explained by the Fifth Circuit, although "[a] non-compete provision 'must strictly comply with the requirements of the statute[,]' … if the provision is geographically overbroad, the

9

court may rely on a severability provision to reform the overbroad provision and 'excise the offending language.'" *Brock Servs.*, 936 F.3d at 296-97 (quoting *Dixie Parking Serv., Inc. v. Hargrove*, 691 So. 2d 1316, 1320 (La. App. 1997), and *SWAT 24 Shreveport Bossier, Inc. v. Bond*, 808 So. 2d 294, 309 (La. 2001)).  Thus, a noncompete provision is "not invalid merely because [it] attempted to reach every Louisiana parish." *Arthur J. Gallagher & Co. v. Babcock*, 703 F.3d 284, 292 (5th Cir. 2012).  "If the provision fails to specify any valid geographical area, however, it cannot be reformed [for that would involve] rewriting a disfavored contract into compliance with a narrowly drawn statutory exception." *Total Safety U.S., Inc. v. Code Red Safety & Rental, LLC*, 423 F. Supp. 3d 309, 314 (E.D. La. 2019) (collecting cases).

The Fifth Circuit and Louisiana state courts have routinely upheld the reformation of overbroad geographic restrictions by striking those parishes in which the employer did not operate. For example, in *Arthur J. Gallagher*, the Fifth Circuit upheld the reformation of a noncompete agreement, whereby the district court struck 55 of the 64 parishes listed in the agreement because the employer only provided services in the nine remaining parishes.  703 F.3d at 292; *see also In re Gulf Fleet Holdings, Inc.*, 2011 WL 1313901, at *9 (Bankr. W.D. La. Mar. 31, 2011) ("[W]hile Exhibit A lists all 64 parishes, the specific designations of individual parishes allows the court to excise parishes from the scope of the non-competition provision in the Employment Agreement based on the evidence presented at trial.").  Likewise, in *Class Action Claim Servs., L.L.C. v. Clark*, the Louisiana Fifth Circuit Court of Appeal determined that a noncompete clause was enforceable in only three of the 23 parishes listed in the agreement, since those were the only parishes in which the employer "was actually conducting business."  892 So. 2d 595, 600 (La. App. 2004).  And, in *Dixie Parking Service, Inc. v. Hargrove*, the Louisiana Fourth Circuit Court of Appeal held that a severability clause would allow the court to "delete the nine extraneous parishes listed in the

exhibit [to the contract] and apply the reformed contract to those parishes … in which [the employer] currently operates." 691 So. 2d at 1320.

>Here, section 20 of the agreement sets out the following severability clause:

>If any provision of this Agreement or any part hereof is invalid, unlawful or incapable of being enforced, by reason of any rule of law or public policy, all other conditions and provisions of this Agreement which can be given effect without such invalid, unlawful or unenforceable provision shall, nevertheless, remain in full force and effect. *The parties expressly acknowledge that this Section 20 shall enable a court to modify any provision of Section 12 the court holds to be illegal, invalid, or otherwise incapable of being enforced.*[35]

In addition to the severability clause, section 12 of the agreement (*i.e.*, the restrictive covenant itself) further provides as to reformation:

>If a court of competent jurisdiction determines that any provision or restriction in this Section 12 is unreasonable or unenforceable, said court *shall modify* such restriction or provision so that it then becomes an enforceable restriction of the activities of Diamond that are competitive with Shelton.[36]

Arguably, then, reformation is not only permitted by the agreement, it is required. Regardless, reading these provisions together and in light of the caselaw allowing for reformation of a restrictive covenant's geographic scope, the restrictive covenant in Diamond's employment agreement is not invalid and unenforceable for being geographically overbroad, as it may be reformed.

### b. At a minimum, the restrictive covenant covers the parishes in which Shelton operated tank-cleaning services *at the time Diamond resigned.*

Having found that the agreement can be reformed, the next step is to determine which parishes (or counties) may be stricken. This depends on whether the parishes in which an employer "carries on" its business is determined as of the time the agreement is executed, the employee is terminated, or the employer seeks to enforce the agreement.

---

[35] R. Doc. 1-1 at 7 (emphasis added).
[36] *Id.* at 5 (emphasis added).

"The starting point in the interpretation of any statute is the language of the statute itself. When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature." *Gloria's Ranch, L.L.C. v. Tauren Expl., Inc.*, 252 So. 3d 431, 445 (La. 2018) (quotation omitted). Though, as explained below, the statute provides the guidance necessary to resolve the issue before the Court, Louisiana's highest court has not provided an analysis of this specific issue. This Court must therefore make an *Erie* guess about how that court would resolve the issue. In making an *Erie* guess, federal courts applying Louisiana law are required to employ the state's "'civilian methodology, whereby [courts] first examine primary sources of law: the constitution, codes, and statutes.'" *Chevron Oronite Co. v. Jacobs Field Servs. N. Am., Inc.*, 951 F.3d 219, 225 (5th Cir. 2020) (quoting *Apache Deepwater, L.L.C. v. W&T Offshore, Inc.*, 930 F.3d 647, 654 (5th Cir. 2019)). Absent guidance from primary sources, courts may look to caselaw, which, although persuasive, is nonbinding secondary authority. *Prytania Park Hotel, Ltd. v. Gen. Star Indem. Co.*, 179 F.3d 169, 175 (5th Cir. 1999); *see also Chevron Oronite*, 951 F.3d at 225 n.5 ("[T]hough decisions of Louisiana's intermediate appellate courts are persuasive authority, they don't strictly bind us.") (citing *Apache Deepwater*, 930 F.3d at 654). This is true of Louisiana appellate court decisions, "even when [they] rise[] to the level of *jurisprudence constante*." *Prytania Park*, 179 F.3d at 175. Nevertheless, federal courts should not disregard an intermediate state appellate court decision "'unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.'" *Renwick v. PNK Lake Charles, L.L.C.*, 901 F.3d 605, 611 (5th Cir. 2018) (quoting *Howe ex rel. Howe v. Scottsdale Ins. Co.*, 204 F.3d 624, 627 (5th Cir. 2000)).

When reforming restrictive covenants, Louisiana courts often look to where the employee worked during his employment or where the company operated at the time the employee was terminated, not the parishes in which an employer operated at the time the agreement was executed.[37] As noted above, in *Dixie Parking*, the court looked to the parishes in which the employer "operated at the time of [the employee's] resignation." *Dixie Parking*, 691 So. 2d at 1320 (enforcing a noncompete agreement by deleting the "nine extraneous parishes" and applying the reformed contract to those parishes "in which [the employer] currently operates"); *see also H&E Equip. Servs., Inc. v. Kleinpeter*, 2021 WL 1609250, at *3 (La. App. Apr. 26, 2021) (upholding the trial court's refusal to enforce a noncompete clause where the employer failed to prove "it was carrying on a like business at the pertinent time immediately following [the employee's] termination"). Typically, the only situation in which courts look to where an employer operated at the time the noncompete agreement was signed is when they are rendering an agreement unenforceable (*i.e.*, void *ab initio*) for failing to list any parishes or municipalities. *See, e.g.*, *Ashland Chem., Inc. v . Lombardino*, 1993 WL 390147, at *3 (E.D. La. Sept. 23, 1993) ("[T]he parties did not specify the parishes in which [the employer] conducted business nor in which [the employee] was to refrain from conducting similar business. … At the time the Agreement was signed, the parties could not have known the areas in which [the employee] would

---

[37] This is also true in Texas. *See, e.g.*, *Cross v. Chem-Air S., Inc.*, 648 S.W.2d 754, 757 (Tex. App. 1983) ("The test for reasonableness as to territorial restraint is whether or not the injunction is confined to territory actually covered by the former employee in his work for the employer."); *Curtis v. Ziff Energy Grp., Ltd.*, 12 S.W.3d 114, 119 (Tex. App. 1999) ("Generally, a reasonable area for purposes of a covenant not to compete is considered to be the territory in which the employee worked while in the employment of his employer."); *GTG Automation, Inc. v. Harris*, 2018 WL 5624206, at *4 (Tex. App. Oct. 31, 2018) ("In the absence of evidence that Harris performed plumbing services on behalf of GTG in a geographical area greater than that of Harris Plumbing, we conclude that the geographical area in which Harris Plumbing operated … was a reasonable limitation for the covenant not to compete. This area … comports with the area where Harris worked while working for GTG."). While not directly applicable due to Louisiana law governing the instant agreement, Texas caselaw is not wholly irrelevant, as Shelton seeks to prohibit Diamond from competing in Texas counties and since the agreement contemplated the application of Texas law.

13

conduct sales during the two year period immediately prior to termination of his employment. In fact, those areas constantly changed throughout [the employee's] employment and were not ascertainable until termination of [his] employment."); *Medivision, Inc. v. Germer*, 617 So. 2d 69, 72 (La. App. 1993) (quoting with approval the grounds recited by the trial court for striking down a noncompete clause: "The contract here proscribes competition within ten miles of offices not established at the time the contract was executed. The employee could not determine at the time of execution the limits of the prohibition. The contract thus contains a potestative element. Furthermore, and more significantly, in failing to 'specify' the proscribed areas, the contract violates Section 921."). But, as recently explained by the Fifth Circuit in *Brock Services*, that is not the situation here.

In *Brock Services*, an employer brought suit against its former vice president of operations for breach of a noncompete agreement after the employee resigned and began working for a direct competitor. 936 F.3d at 293. The employer conceded that the noncompete was geographically overbroad because it was not limited to specified parishes and municipalities, so the district court relied on the agreement's severability clause to reform the noncompete provision. In particular, the district court modified the definition of "restricted area" as follows:

> "Restricted Area" means the area ~~within 100 mile radius of any actual, future or prospective customer, supplier, licensor, or business location of the Company,~~ that Employee conducted business in Employee's capacity as an employee of the Company within the last one (1) year of Employee's employment with the Company, either physically, via mail or via electronic means, including ~~but not limited to~~, as applicable, the parishes of Assumption, Caddo, Calcasieu, St. Charles, East Baton Rouge, Iberia, Livingston, Iberville, Jefferson, Ouachita, Lafourche, Lafayette, Orleans, Plaquemines, Rapides, Vermilion, St. Bernard, St. James, St. John, St. Martin, St. Mary, St. Tammany, Tangipahoa, Terrebonne, Washington, and the municipalities of New Orleans ~~and surrounding areas as well as the municipalities in the parishes listed above~~.

14

*Id.* at 293-95.  On appeal, the former employee argued that the agreement, even after being reformed, was still unenforceable because "he could not have known when he signed the Agreement where he would be prohibited from working because he did not know at the time where he would work in the year before he left."  *Id.* at 296.  The Fifth Circuit rejected this argument, explaining that the cases stating that an employee must know "on the front end" which parishes were off limits all dealt with restrictive covenants that failed to identify *any* parishes or municipalities.  *Id.* at 297 (distinguishing *Waguespack*, 185 F. Supp. 3d at 929, as well as *Aon Risk Servs. of La., Inc. v. Ryan*, 807 So. 2d 1058, 1062 (La. App. 2002), one of the principal cases upon which Diamond relies).  Unlike those cases, the noncompete in *Brock* listed specific parishes, and "[t]he reformation served only to narrow the provision's scope by removing catch-all clauses that went beyond the listed parishes, not to identify specific parishes after the fact."  Importantly, the court concluded that "[w]hen signing the Agreement, [the employee] knew that he *could* be prohibited from working in the identified parishes."  *Id.* (emphasis added).

Therefore, in *Brock*, despite the employee not knowing at the time he executed the contract which parishes he would be working in during the course of his employment, and thus prohibited from competing in under the noncompete provision, the Fifth Circuit enforced the restrictive covenant since it complied with the geographic requirement of La. R.S. 23:921 in that it listed specific parishes.  In reforming the contract, the court did not look to where the employer operated at the signing of the agreement.  Instead, it looked to the parishes in which the employee worked during his tenure with the company.  Like the employee in *Brock*, although Diamond, when he signed the employment agreement, did not know which parishes he would be working in during his employment with Shelton, he did know that he could be prohibited from working in the parishes

15

that were listed in the agreement. Thus, Diamond cannot now claim that he could not have known where he would be restricted from competing.

Significantly, this application of *Brock* comports with the language and legislative intent of La. R.S. 23:921. There is no requirement in § 921 that an employer operate in the listed parishes at the time the agreement is executed. The statute states that an employer may restrict an employee from carrying on a like business within specified locations, "*so long as* the employer carries on a like business therein, not to exceed a period of two years from termination of employment." La. R.S. 23:921(C) (emphasis added). According to one authoritative dictionary, the phrase "so long as" can mean either "during and up to the end of the time that; while" or "provided that."[38] The first meaning tends to support Shelton's construction that the parishes in which the employee's competition is prohibited is determined at the time the noncompete is sought to be enforced – or, at least, at the time employment is terminated. The second meaning might be read to support Diamond's view that the relevant time is the execution of the agreement. "As the language at issue is susceptible of more than one meaning, we must apply and interpret it in a manner that is logical and consistent with the presumed fair purpose and intention the legislature had in enacting it." *SWAT 24*, 808 So. 2d at 303.

---

[38] *So Long As, Merriam-Webster*, https://www.merriam-webster.com/dictionary/solongas (last accessed Jan. 19, 2024). This definition is identical to that provided in the ninth edition of *Merriam-Webster's Collegiate Dictionary*, published roughly contemporaneous with the drafting of the 1989 amendment to La. R.S. 23:921, which included the "so long as" phrase for the first time. *See So Long As,* MERRIAM-WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY (9th ed. 1990). And, under prevailing canons of interpretation, this is the definition that should be consulted to ascertain the meaning of this statutory text. *See, e.g.*, *Utah v. Evans*, 536 U.S. 452, 492 (2002) (Thomas, J., concurring in part) ("Dictionary definitions contemporaneous with the ratification of the Constitution inform our understanding."); *Dep't of Com. v. U.S. House of Representatives*, 525 U.S. 316, 346 (1999) (Scalia, J., concurring in part) (relying on "[d]ictionaries roughly contemporaneous with the ratification of the Constitution" to ascertain a statutory term's meaning); *see also Capio Funding, L.L.C. v. Rural/Metro Operating Co.*, 35 F.4th 353, 357 n.9 (5th Cir. 2022) (quoting ANTONIN SCALIA & BRIAN GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS, 419-23 (2012), which cautions against using a single dictionary definition, but states that *Merriam-Webster's Collegiate* is "one of 'the most useful and authoritative for the modern English language generally and for law," and thus "provides a less-speculative definition" (alteration omitted)).

Subsection C uses the phrase "so long as" immediately before discussing the two-year time limitation for any restriction under the statute. And this time limit is measured from the employee's "termination of employment," which, while not conclusive, tends to favor a finding that the legislature intended "so long as" to mean "during and up to the end of the time that" or "while" the employee remained with the company. Fortunately, though, the search for legislative intent does not end here, but is made plain by the legislature's subsequent amendment of the statute. In weighing this amendment, the Court is mindful that "[s]pecific words within a statute, however, may not be read in isolation of the remainder of that section or the entire statutory scheme," *Sutton v. United States*, 819 F.2d 1289, 1293 (5th Cir. 1987), and that "a statute is to be read as a whole since the meaning of statutory language, plain or not, depends on context." *King v. St. Vincent's Hosp.*, 502 U.S. 215, 221 (1991) (internal citation omitted). A reading of the entire statute, in light of this amendment, makes its interpretation clear. Subsections J, K, and L – added to § 921 in 2008 – allow corporations, partnerships, and limited liability companies to restrict their shareholders, partners, and members, respectively, from competing with them in specified parishes, "*for as long as* the [company] carries on a similar business therein, not to exceed a period of two years from the date [the partner, shareholder, or member] ceases to be" such. *See* La. R.S. 23:921(J), (K), (L) (emphasis added). Thus, in the legislature's most recent expression of its intent concerning provisions of § 921 that parallel the relevant provision of subsection C, it chose to adopt the phrase "for as long as," rather than "so long as," as the more accurate statement of its meaning. Construing the subsections together and in context, being *in pari materia* as parallel provisions addressing different applications of the same principle, it is logical to assume that the phrase "so long as" in subsection C has the same meaning as the phrase "for as long as" in subsections J, K, and L. By thus reading the text of the statute as a whole, it is plain that the

legislature intended the phrase "so long as" to mean "for as long as," or, said differently, "during and up to the end of the time that" or "while."  This interpretation negates Diamond's argument that the statute requires an employer to be operating in the specified parishes at the time the agreement is executed, as "during and up to the end of the time that" and "for as long as" are both forward-looking phrases.  The Court need not and does not now decide whether this statutory language requires that the geographic scope of the noncompete be determined at the time the employee's employment is terminated or the time the noncompete is sought to be enforced because there is no evidence before the Court that the prohibited parishes or counties were any different at these two times.

The only case the Court has located that has expressly interpreted § 921(C) as requiring an employer to be carrying on business in the specified parishes on the date of the agreement's execution is *Deep South Communications, LLC v. Fellegy*, 652 F. Supp. 3d 636 (M.D. La. 2023).  However, in that case, the employer attempted to show that it "carries on" business in certain parishes by pointing to work completed years before the employee signed the agreement.  Thus, the real issue was "whether an employer may use business activities occurring *before* execution of the non-competition agreement in order to show it 'carries on' a like business in the geographical areas specified in the agreement."  *Id.* at 673 (emphasis in original).  The court answered this question in the negative, reasoning:

> If La. R.S. 23:921(C) were interpreted to include the employer's past business, the employee would be prohibited from competing in areas where its employer, for example, may have made a single sale or performed services only once in the past; this would include situations where the single activity occurred years or even decades before the employee signed the agreement.

*Id.* at 675.  This Court agrees with this holding and rationale of *Deep South*.  But they are clearly distinguishable from the issue *sub judice*, which is whether an employer, seeking to start and grow

18

a new business, may include parishes in which it does not yet operate at the signing of the agreement but in which it plans to and does operate at the time of the employee's termination.

While the *Deep South* court did comment on this issue, stating that "La. R.S. 23:921(C) does not allow the geographical limitation to be based on business that occurs after the date the contract is executed," that was not the issue presented in that case, so the comment is dicta. Moreover, such a static application of the statute would lead to absurd results and, in fact, would yield the exact outcome eschewed by *Deep South*: If the scope of a business's operations were to be determined only as of the date an employee signed the contract, then a declining business – which operated in multiple parishes at the time of execution but ceased operations in one or more of those parishes before the employee's termination – would be allowed to restrict its former employee from competing in those previously-occupied parishes. Yet, Diamond urges that this outcome is compelled by § 921's use of the present tense for the phrase "carries on a like business," misconstruing such usage to confine the restrictive covenant's application to a single point in time (execution of the contract), when use of the present tense is more properly understood to require that a company be carrying on a like business during and up to the end of employment – in other words, "for as long as" the employee remains employed. This interpretation captures the more dynamic and forward-looking application of the statutory language intended by the Louisiana legislature.[39]

---

[39] It is also the interpretation adopted by the Fifth Circuit. In *Arthur J. Gallagher & Co. v. Babcock*, 339 F. App'x 384, 387-88 (5th Cir. 2009), the Fifth Circuit rejected the district court's determination that the restrictive covenants at issue were geographically overbroad *per se* and remanded for the district court to "consider[] evidence regarding the nature and extent of Gallagher's business" to determine whether it "carries on a like business" within the specified territories, without confining this evidence to the single point in time of the covenants' execution. On remand, the district court considered evidence of Gallagher's business as of the date the employees left the company, not the date they executed the restrictive covenants. *See* 2011 WL 121891, at *6-7 (E.D. La. Jan. 10, 2011). The decision thereafter made by the district court on the basis of this evidence – namely, to enforce the reformed restrictive covenants – was upheld by the Fifth Circuit on appeal. 703 F.3d at 292.

Because the restrictive covenant in Diamond's employment agreement complies with the statute by listing specific parishes and counties in which Diamond is prohibited from competing, and because the parties agree that Shelton performed tank cleaning in six of the listed parishes and counties when Diamond's employment terminated, the covenant is not invalid or unenforceable once reformed to include only those six territories.

### IV. CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Diamond's motion for summary judgment (R. Doc. 8) is DENIED.

New Orleans, Louisiana, this 26th day of January, 2024.

_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE